IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

RAYMOND AND GURDA CHARLESWELL, :
JACQUELINE JEFFRIES, MARILYN A. :
CREQUE, JEAN S. MAYNARD, :
HOLLISTER PIERRE, and VERDINE :
PIERRE, individually, and JACINTA :
SPRINGETTE, WILFREDO ACOSTA, and :  CIVIL ACTION
IRENE ACOSTA, individually and on behalf :
of a class of persons similarly situated, :  NO. 01-119
        Plaintiffs, :
          :
          :
    v.      :
          :
CHASE MANHATTAN BANK, N.A., :
CHASE MANHATTAN MORTGAGE :
CORPORATION, and CHASE AGENCY :
SERVICES, INC., :
   Defendants / Third-Party Plaintiffs, :
          :
    v.      :
          :
CERTAIN INTERESTED UNDERWRITERS :
AT LLOYDS OF LONDON :
   Defendant / Third-Party Defendant. :

DuBOIS, J.                June 22, 2009

## M E M O R A N D U M

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  A. Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  B. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
  A. Defendants' Arguments that the Claims in Plaintiffs' Second Amended Complaint
   are Time-Barred by Statutory and Contractual Limitations Periods . . . . . . . . . . 14
    1. Original Plaintiffs' Individual Claims Against the Chase Defendants and

                  Lloyds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      2.    New Plaintiffs' Individual Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
          a.     Claims Against the Chase Defendants . . . . . . . . . . . . . . . . . . . . 25
          b.     Claims Against Lloyds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
      3.    Class Claims and Class Action Tolling Under American Pipe . . . . . . . . 29
      4.    Lloyds's Argument that Plaintiffs' Claims Are Time-Barred Under the
            Suit Limitations Provision in the Lloyds Master Policy . . . . . . . . . . . . 32
      5.    Plaintiffs' Excessive Premium Claims (Counts II & VI) . . . . . . . . . . . . 33
  B.    The Chase Defendants' Argument that in the Absence of Any Written Agreement,
      Plaintiffs' Contract Claim Should Be Dismissed (Count I) . . . . . . . . . . . . . . . . 35
  C.    The Chase Defendants' Arguments With Regard to Plaintiffs' Claims for Breach
      of Fiduciary Duty, Negligence, Fraud, and Violations of RICO & CICO (Counts II
      – VI) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
  D.    Lloyds's Arguments Concerning Defects in Plaintiffs' Class Allegations . . . . . 39

**V.**    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

# I.    INTRODUCTION

In the instant action, plaintiffs, owners of real property in the Virgin Islands, assert claims against defendants, Chase Manhattan Bank, N.A. ("CMB"), Chase Manhattan Mortgage Corporation ("CMMC"), Chase Agency Services, Inc. ("CAS") (collectively "Chase defendants"), and Certain Interested Underwriters at Lloyds of London ("Lloyds"), for recovery of tens of millions of dollars in insurance coverage for property damage caused by Hurricane Marilyn in September 1995.

Plaintiffs allege in the Second Amended Complaint, *inter alia*, that defendants CMB and CMMC, which held mortgages on plaintiffs' property, procured or provided hazard insurance coverage for plaintiffs and then misrepresented to plaintiffs the full nature and extent of their coverage. According to plaintiffs, the Chase defendants and Lloyds failed to properly adjust plaintiffs' insurance claims and, as a result, undercompensated plaintiffs for their hurricane-related losses. Plaintiffs' further assert that the Chase defendants charged plaintiffs excessive

premiums for post-hurricane insurance coverage on their property in light of its significantly decreased value. Plaintiffs seek relief for these injuries in claims for breach of contract, breach of fiduciary duty, fraud, negligence, and civil violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. and the Criminally Influenced and Corrupt Organizations Act ("CICO"), 14 V.I. Code Ann. §§ 600 et seq.

Presently before the Court are two motions to dismiss plaintiffs' Second Amended Complaint, one filed by the Chase defendants and one filed by Lloyds. Each motion to dismiss raises a number of legal arguments, many of which the Court has previously considered. For the reasons set forth in this Memorandum, the Court denies the Chase defendants' Motion to Dismiss. Also for the reasons set forth in this Memorandum, the Court denies in part and grants in part Lloyds's Motion to Dismiss. Lloyds's Motion to Dismiss is granted with respect to the breach of fiduciary duty, fraud, RICO, and negligence claims (Counts II, III, IV, and VI) asserted by plaintiffs Jacinta Springette, Wilfredo Acosta, and Irene Acosta. Lloyds's Motion to Dismiss is also granted with respect the RICO claim (Count IV) asserted by plaintiffs Raymond Charleswell, Gurda Charleswell, Jacqueline Jeffries, Marilyn A. Creque, Jean S. Maynard, Hollister Pierre, and Verdine Pierre. The Lloyds's Motion to Dismiss is denied in all other respects. To the extent that the Court has denied defendants' motions to dismiss, such denial is without prejudice to defendants' right to raise the issues addressed in the motions to dismiss at the conclusion of relevant discovery by motion for summary judgment and/or at trial.

There is one other issue not presented in the motion papers which the court raises *sua sponte*—plaintiffs' claims for excessive premiums included in Count II (breach of fiduciary duty) and Count VI (negligence). Plaintiffs' were granted leave by Order dated September 7, 2005 to

file a motion for leave to file a Second Amended Complaint which, *inter alia*, complied in all respects with the August 6, 2004 Memorandum and Order denying class certification. In that Memorandum, the Court ruled that all excessive premium claims were time-barred based on the evidence then before the Court. Accordingly, the Court dismisses all such claims, subject to plaintiffs' right to seek reconsideration if warranted by facts or legal authority not presently before the Court.

## II.   BACKGROUND

### A.   Procedural History

Plaintiffs Raymond Charleswell, Gurda Charleswell, Jacqueline Jeffries, Marilyn A. Creque, Jean S. Maynard, Hollister Pierre, and Verdine Pierre ("original plaintiffs")[1] filed a class action Complaint on July 9, 2001 in the District Court of the Virgin Islands against CMB, CMMC, and CAS. The original Complaint asserted twelve causes of action in separate counts: negligent misrepresentation, fraud, negligence, breach of contract, breach of fiduciary obligation, breach of the duty of good faith and fair dealing, bad faith, and civil violations of RICO and CICO.

This action was originally assigned to Judge Thomas K. Moore of the District Court of the Virgin Islands, who recused himself. By Order dated September 26, 2001, the late Chief Judge Edward Becker of the United States Court of Appeals for the Third Circuit assigned the case to this Court pursuant to 28 U.S.C. § 292(b). See 28 U.S.C. § 292(b) ("The chief judge of a circuit may, in the public interest, designate and assign temporarily any district judge of the

---

[1] Marsha Christian, one of the plaintiffs to the original class action Complaint, was voluntarily dismissed on July 3, 2002.

circuit to hold a district court in any district within the circuit."). On November 16, 2001, plaintiffs filed a motion for class certification.

The Chase defendants filed a motion to dismiss on February 1, 2002 and Third Party Complaint against Lloyds on July 16, 2002. By Order and Memorandum dated February 27, 2004, the Chase defendants' motion to dismiss was granted in part and denied in part. The Court granted the motion with respect to plaintiffs' claims for negligent misrepresentation, bad faith, violation of RICO § 1962(a), and violation of CICO § 605(c), and denied the motion to dismiss in all other respects. Charleswell v. Chase Manhattan Bank, N.A. (Charleswell I), 308 F. Supp. 2d 545 (D.V.I. 2004).

On April 14, 2004, the Court held a hearing on plaintiffs' motion for class certification. By Order and Memorandum dated August 6, 2004, the Court denied plaintiffs' motion for class certification without prejudice to plaintiffs' right to file an amended class action complaint or renewed motion for class certification. Charleswell v. Chase Manhattan Bank, N.A. (Charleswell II), 223 F.R.D. 371 (D.V.I. 2004).

Plaintiffs filed a Motion for Leave to File a First Amended Complaint Instanter on December 1, 2004. Included for the first time in the First Amended Complaint were plaintiffs Jacinta Springette, Wilfredo Acosta, and Irene Acosta ("new plaintiffs"). The First Amended Complaint also named Lloyds as a defendant; Lloyds had not been named in the original Complaint. By Order dated September 7, 2005, the Court denied plaintiffs' motion without prejudice and concluded that "plaintiffs should be given one final opportunity to submit a complaint which complies in all respects with the Court's Memorandum and Order of August 6, 2004 [which denied plaintiffs' motion for class certification.]"

5

Thereafter, plaintiffs filed a Motion for Leave to File a Second Amended Complaint, which was granted by the Court on June 17, 2008. The Second Amended Complaint, filed on June 18, 2008, differs materially and structurally from the original Complaint. It includes six causes of action:

Count I:    Breach of Contract of Insurance

Count II:   Breach of Fiduciary Duty

Count III:  Fraud

Count IV:   RICO Violations

Count V:    CICO Violations

Count VI:   Negligence

The new plaintiffs assert individual claims and claims on behalf of the putative class under each count against both the Chase defendants and Lloyds. The original plaintiffs assert no class action claims and are not members of the class represented by the new plaintiffs; they pursue only individual claims. (2d Am. Compl. ¶ 1(a).) In Counts IV and V, the original plaintiffs assert their individual claims against both the Chase defendants and Lloyds. In Counts I, II, III, and VI, the original plaintiffs assert their individual claims against the Chase defendants, but not Lloyds. (Id.)

**B.    Factual Background**

In Charleswell I and Charleswell II, the Court recited the allegations of the original Complaint for purposes of ruling on the Chase defendants' first motion to dismiss and plaintiffs' motion for class certification. The Court also reviewed evidence presented for purposes of class certification in Charleswell II. The following facts are taken from the Second Amended

Complaint and relate to all plaintiffs, including the original named plaintiffs, the new named

plaintiffs, and the putative class plaintiffs. Where relevant, the Court notes any differences

between the facts alleged in the Second Amended Complaint and any facts alleged in the original

Complaint.

CMB is a national banking association with its principal place of business in New York

City, New York.[2] (Second Amended Complaint ("2d Am. Compl.") ¶ 4.)  CMMC and CAS are

corporations affiliated with CMB.[3]  (2d Am. Compl. ¶¶ 5-6, 37.)  Beginning on January 1, 1994,

CMB and CMMC provided banking and mortgage services in the United States Virgin Islands

("Virgin Islands"). (2d Am. Compl. ¶ 14.) According to the Second Amended Complaint, CMB

and CMMC also operated the U.S. Virgin Islands Property Insurance Program ("PIP"), which

was created and administered by CMB's internal insurance group in New York, The Donnelly

Corporation, and Patrick R. Donnelly, in concert with Lloyds and agents of Lloyds. (Id. ¶¶ 18,

37.) After Hurricane Marilyn, CAS also participated in the operation of the PIP. (Id. ¶ 38.)

Prior to September 15, 1995, plaintiffs obtained mortgages from CMB and CMMC in

connection with the purchase of their homes and other properties in the Virgin Islands. (2d Am.

Compl. ¶ 16.) In addition, CMB and CMMC sold plaintiffs "windstorm, casualty, and hazard

---

[2] CMB has since merged with J.P. Morgan Bank to form JPMorgan Chase Bank, N.A.
(2d Am. Compl. ¶ 4; Chase Defs.' Mot. 1.)

[3] In the Second Amended Complaint plaintiffs refer to CMB and  CMMC collectively as
the "Chase defendants." (2d Am. Compl. ¶ 5.) Because the Court uses the phrase "Chase
defendants" to mean CMB, CMMC, and CAS collectively, the Court states the facts of this case
as they relate to each individual Chase defendant.

insurance" on their mortgaged property through the PIP.[4] (Id. ¶¶ 2, 16, 18.) Plaintiffs allege that CMB and CMMC sold them between sixty and ninety-eight million dollars of insurance coverage, including "DP-3" coverage,[5] for which they paid insurance premiums directly to CMB and CMMC. (Id. ¶¶ 20, 22, 27.)

CMB and CMMC did not provide plaintiffs with copies of any written policies memorializing the insurance coverage provided to plaintiffs under the PIP. (2d Am. Compl. ¶¶ 24, 25.) According to the Second Amended Complaint, plaintiffs paid the premiums charged by CMB and CMMC and "otherwise performed their insurance-related obligations." (Id. ¶ 29.) The coverage amounts for each mortgagee as well as the premium payments made by each mortgagee were recorded in a "Force Order Report," which was allegedly prepared monthly by CMB and CMMC. (Id. ¶ 21 & Ex. 2.)

As part of the PIP, CMB and CMMC insured plaintiffs' mortgaged properties through a "Master Policy" issued by Lloyds. (2d Am. Compl. ¶¶ 2, 15, 20 & Ex. 1.) For the policy period

--------

[4] In the original Complaint, plaintiffs alleged that the CMB and CMMC mortgage agreements required plaintiffs to, inter alia, "acquire and maintain insurance on their mortgaged property" and that mortgages who were not able to obtain acceptable insurance were offered the PIP as a "'forced placed insurance' program." (Compl. ¶¶ 3, 16, 18.) Plaintiffs further alleged that although CMB and CMMC "assured" plaintiffs that the program would provide them with "adequate coverage," CMB and CMMC only secured enough insurance to protect their mortgage loan interest in the properties, leaving the homeowners' equity interests uninsured. (Compl. ¶¶ 18, 32.) These allegations do not appear in the Second Amended Complaint.

[5] In the Second Amended Complaint, plaintiffs use the term "DP-3 coverages" to refer to coverage for windstorm losses aside from damage to the insured dwelling. In the original Complaint, plaintiffs did not use the term "DP-3 coverage" and instead referred to such coverage as "additional coverages." (Compl. ¶ 24.) Accordingly, the Court used the term "additional coverages" in Charleswell I and Charleswell II to refer to what the Second Amended Complaint calls "DP-3 coverages." For purposes of this Memorandum, the Court adopts the "DP-3" terminology of the Second Amended Complaint.

running from June 30, 1995 to June 29, 1996, the Lloyds Master Policy lists both CMB and "Individual Mortgagers for their individual interests" as the "Assured" parties. (Id. ¶ 27 & Ex. 1.) The Lloyds Master Policy had a forty million dollar single occurrence limit and included DP-3 coverage for seven categories of loss.[6] (Id. ¶¶ 20(a), 22.) According to plaintiffs, the premiums paid by CMB under the Lloyds Master Policy were lower than the premiums that CMB and CMMC charged to plaintiffs. (Id. ¶¶ 19, 23.) Based on these allegations, plaintiffs assert that CMB and CMMC treated the Lloyds Master Policy as "re-insurance" for a portion of the sixty to ninety-eight million dollars of insurance coverage sold directly to plaintiffs under the PIP. (Id. ¶¶ 22-23.)

According to plaintiffs, CMB and CMMC operated the PIP as "an unregulated and unlicenced insurance company to the extent they sold insurance to Plaintiffs and the Class in excess of the coverage provided by the Lloyds Master Policy and to the extent they charged premiums in excess of those charged by Lloyds" and that CMB and CMMC operated as "an unlicensed insurance agent and broker to the extent they obtained, issued, procured, placed, sold and provided insurance to Plaintiffs and the Class." (2d Am. Compl. ¶ 17.) Plaintiffs further

---

[6] Plaintiffs aver in the Second Amended Complaint that their DP-3 coverage included (1) alternative housing during the repair/ reconstruction period, (2) damage to other structures, (3) lost rental income, (4) demolition and debris removal costs, (5) temporary repairs and mitigation expenses, (6) losses to certain personal property, and (7) landscaping costs. Some of these DP-3 coverages (4–7) were "Reducing Coverages" in that the claim amount would have been deducted from the amount of each plaintiff's total coverage. The other DP-3 coverages (1–3) were "Additional Coverages" because the claim amount, not to exceed ten percent (10%) of each plaintiff's total coverage, would have been in addition to the total coverage amount. (2d Am. Compl. ¶¶ 20, 33-34.)

allege that CMB and CMMC, in concert with Donnelly,[7] "actively misrepresented to the Virgin Islands Division of Banking and Insurance the exact nature and extent of the PIP." (Id. ¶ 40.)

On September 15, 1995, Hurricane Marilyn struck the Virgin Islands. (2d Am. Compl. ¶ 26, 30.) The Hurricane caused substantial damage to each plaintiff's home and/or other property, resulting in losses which were included in the DP-3 coverage. (Id.) After Hurricane Marilyn, each plaintiff contacted CMB to obtain information on how to file a claim for insurance coverage. (Id. ¶ 31.) According to plaintiffs, the claim adjustment process was administered by CMB and CMMC in concert with Lloyds. (Id. ¶ 32.)

Following the hurricane, CMB and CMMC sent each plaintiff a "Notice of Insurance," which failed to mention their DP-3 coverage and, according to plaintiffs, "misrepresented the nature and extent of insurance provided" under plaintiffs' insurance policies. (2d Am. Compl. ¶ 24 & Ex. 3.) Plaintiffs claim that defendants failed to inform plaintiffs of the full extent of their coverage and failed to pay for all of the losses covered by plaintiffs' insurance policies. (Id. ¶¶ 26, 33-36.) Specifically, plaintiffs allege that defendants did not inform plaintiffs of the existence of DP-3 coverage or their entitlement to compensation for DP-3 covered losses. (Id. ¶¶ 33-34.)

On September 23, 24 and 25, 1995, CMB and CMMC mailed letters to plaintiffs which stated that it was "'in the process of arranging renewed insurance for [plaintiffs'] mortgaged property through [the] U.S.V.I. Property Program'" and "made other false and misleading statements to Plaintiffs and the Class as to the insurance coverages being provided." (2d Am.

---

[7] The Second Amended Complaint does not specify whether "Donnelly" refers to The Donnelly Corporation or Patrick R. Donnelly. (2d Am. Compl. ¶¶ 18, 37, 40.)

Compl. ¶ 44.) Moreover, plaintiffs allege that, after the hurricane, CMB, CMMC, and CAS "engaged in fraudulent acts of overbilling" by mailing invoices and premium statements to plaintiffs which charged plaintiffs for insurance coverage "on buildings and structures which they knew either no longer existed or [were] worth far less than the amount of the insurance sold." (Id. ¶ 46.)

According to the Second Amended Complaint, CMB and CMMC continued to withhold the terms of the Lloyds Master Policy and "actively sought to suppress [its] disclosure." (2d Am. Compl. ¶ 35.) In addition, the Second Amended Complaint alleges that "[d]efendants, on their own and acting in concert with one another, deliberately and systematically suppressed, concealed, and misrepresented any coverage beyond dwelling repairs." (Id. ¶ 36.) In misrepresenting the nature and extent of plaintiffs' insurance coverage, defendants allegedly utilized the U.S. mail and wire services. (Id. ¶ 44.)

Original plaintiffs filed this action on July 6, 2001 on behalf of themselves and a putative class consisting of all persons who "held a Chase mortgage on real property in the United States Virgin Islands and who had insurance on their mortgaged property through the [CMB and CMMC's] 'forced placed insurance' program at the time Hurricane Marilyn struck the Virgin Islands on September 15, 1995." (Compl. ¶ 7.a.) In the Second Amended Complaint, the new plaintiffs seek to represent a class consisting of all persons and entities "(I) [who] had a Chase mortgage on real property in the United States Virgin Islands; (ii) who had insurance on their mortgaged property through [CMB and CMMC's] Property Insurance Program and the Lloyds 'Master Policy;' (iii) whose mortgaged property was damaged by Hurricane Marilyn, including DP-3 losses and (iv) who made a claim for Hurricane Marilyn damage to [defendants]." (2d Am.

11

Compl. ¶ 10.)

The original plaintiffs state they were not aware of their entitlement to the DP-3 coverages, and could not have been aware of such coverages, until plaintiffs' counsel obtained a copy of the Lloyds Master Policy in December 1999. (2d Am. Compl. ¶ 36.) The new plaintiffs state that they were not aware of the DP-3 coverages until they retained counsel in April 2004 (Springette) and October 2004 (the Acostas). (Id. ¶ 28.)

Plaintiffs seek from defendants compensation for (1) losses which would have been covered by the DP-3 provisions of the Lloyds Master Policy, (2) excess insurance premiums paid to defendants after Hurricane Marilyn, and (3) losses to plaintiffs' uninsured equity interest and personal property due to defendants' failure to advise plaintiffs of the opportunity to obtain personal property insurance and to increase their dwelling coverage to an amount above their loan balance. (2d Am. Compl. ¶¶ 54, 57-59, 65, 67, 72, 77, 80, 92, 95-96.)

## III.    STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion.  In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir.

2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, a

complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550

U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that

defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility

and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court utilized a "two-pronged approach" which it later

formalized in Iqbal. Iqbal, 129 S. Ct. at 1950. Under this approach, a district court first identifies

those factual allegations which constitute nothing more than "legal conclusions" or "naked

assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption

of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court then assesses "the 'nub' of

the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s] . . . —to

determine" whether it states a plausible claim for relief. Iqbal, 129 S. Ct. at 1950; Twombly, 550

U.S. at 565.

**IV.   DISCUSSION**

Before 1984, the District Court of the Virgin Islands served as a trial court with original

jurisdiction over local actions and the authority to decide issues of territorial law. See V.I. Dep't

of Conservation & Cultural Affairs v. V.I. Paving, Inc., 714 F.2d 283, 285-86 (3d Cir. 1983)

(citing Carty v. Beech Aircraft Corp., 679 F.2d 1051, 1057 (3d Cir.1982)). In 1984, pursuant to

its powers under Article IV of the United States Constitution, Congress "established the

framework for a dual system of local and federal judicial review in the Virgin Islands," akin to

13

the dual system of state and federal courts within each state. Edwards v. HOVENSA, Inc., 497

F.3d 355, 358, 360 (3d Cir. 2007) (quoting Parrott v. Gov't of the V.I., 230 F.3d 615, 619 (3d

Cir. 2000)). The federalism principles which govern the relationship between state and federal

courts also apply with regard to the territorial courts of the Virgin Islands. Id. at 359-61.

Accordingly, this Court looks to the jurisprudence of the Supreme Court of the Virgin

Islands when ruling on issues of territorial law, and where no such jurisprudence exists, this

Court must predict how the Virgin Islands Supreme Court would rule. Edwards, 497 F.3d at 361

(discussing the application of Erie R.R. Co. v. Thompkins, 304 U.S. 64 (1938)). In predicting the

rulings of the Virgin Islands Supreme Court, this Court gives due weight to the decisions of the

Superior Court of the Virgin Islands and, in the absence of any local law, relies on "[t]he rules of

the common law, as expressed in the restatements of the law approved by the American Law

Institute, and to the extent not so expressed, as generally understood and applied in the United

States." 1 V.I. Code Ann. § 4; Edwards, 497 F.3d at 361.

## A.   Defendants' Arguments that the Claims in Plaintiffs' Second Amended Complaint are Time-Barred by Statutory and Contractual Limitations Periods

Under Virgin Islands law, tort claims, such as plaintiffs' claims for breach of fiduciary

duty (Count II), negligence (Count VI), and fraud (Count III), are governed by a two-year statute

of limitations. 5 V.I. Code Ann. § 31(5)(A). The limitations periods for RICO and CICO are four

and five years, respectively. Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S.

143, 156 (1987); 14 V.I. Code Ann. § 607(h). Plaintiffs' contract claim is subject to a six-year

statute of limitations. 5 V.I. Code Ann. § 31(3)(A).

In ruling on the Chase defendants' motion to dismiss the original Complaint, the Court

14

concluded that the "disclosure of the Lloyd's insurance policy to plaintiffs' attorney in December of 1999 provided plaintiffs with sufficient facts to start the running of the statute of limitations." Charleswell I, 308 F. Supp. 2d at 563. Further, the Court stated that "plaintiffs allege sufficient facts in the Complaint to explain why the discovery of their cause of action did not occur sooner—they allege that they were not aware of their injury until December of 1999 due to the Chase defendants' refusal to disclose the terms of the Lloyd's insurance policy." Id. Because the original plaintiffs filed the original Complaint on July 9, 2001, their claims were not barred by any statute of limitations at issue in the case, the shortest of which was two years. Id.

Before turning to defendants' statutes of limitations arguments, the Court must address one issue raised by plaintiffs. Plaintiffs assert that their claims in Count II (breach of fiduciary duty) "have a 6 year limitations period pursuant to 5 V.I.C. § 31(3)(B)." (Pls.' Resp. to Lloyds Mot. 11.) Section 31(3)(B) of Title 5 of the Virgin Islands Code provides that civil actions based on "liabilit[ies] created by statute, other than a penalty or forfeiture" are subject to a six-year statute of limitations. Plaintiffs do not explain their assertion, cite to any authority, or address the Court's contrary ruling in Charleswell I that plaintiffs' breach of fiduciary duty claims are subject to a two-year statute of limitations. Charleswell I, 308 F. Supp. 2d at 562.

Plaintiffs aver as follows with respect to their breach of fiduciary duty claim:

> 64.  The defendants had obligations under Virgin Islands law to use the utmost good faith, honesty, and equity, and to avoid deception when dealing with Plaintiffs and the Class. As such, they had fiduciary obligations to Plaintiffs and the Class.
>
> 65.  [Without] a reasonable basis for their acts and omissions, and with reckless disregard, the Chase defendants breached their fiduciary duties to Plaintiffs and the Class when they failed: (i) to disclose to Plaintiffs and the Class the existence of the Additional Coverages and the Reducing Coverages in the Notices of Insurance; (ii) to provide them with copies of the policies; and (iii) to pay for the covered DP-3

15

losses. By withholding the Master Policy from the Class Plaintiffs and the Class, Lloyds violated its duty under the VI Insurance Code to seasonably provide the Class with copies of their policies. Defendants also breached their fiduciary duties to Plaintiffs and the Class by over-insuring their homes and properties <u>after</u> Hurricane Marilyn and collecting premiums for that over-insurance, in violation of 22 V.I.C. § 1051(c).

66. Under Virgin Island statutes, defendant violated their: (a) duty under 22 V.I.C. § 825 to seasonably provide the Class with copies of their policies; (b) duty under 22 V.I.C. § 1209 not to misrepresent the nature and extent of the policies; (c) duty under 22 V.I.C. § 1051(c) to refrain from issuing, placing, procuring, or providing "overinsurance" on any property in the Virgin Islands; and (d) their duties under 22 V.I.C. §§ 1201 and 1204 to refrain from false representations and unfair practices. As a result, defendants have also violated their statutory duty under 22 V.I.C. § 2 to act in "good faith, abstain from deception and pracctice honesty and equity in all insurance matters."

(2d Am. Compl. ¶¶ 64-66.)

The six-year limitations period advanced by plaintiffs is evidently based on the theory that defendants' alleged violations of the Virgin Islands Insurance Code make their breach of fiduciary duty claim "an action upon a liability created by statute, other than penalty or forfeiture." 5 V.I. Code. Ann. § 31(3)(B). The parties have not briefed the question of whether Virgin Islands Insurance Code authorizes private rights of action such that the violations alleged by plaintiffs would impose liability on defendants as insurers or insurance brokers. The Court notes for present purposes, however, that plaintiffs have not asserted a cause of action under the Virgin Islands Insurance Code and instead allege a common law claim for breach of fiduciary duty.

In <u>Charleswell I</u>, the Court categorized plaintiffs' breach of fiduciary duty claim as a tort claim subject to a two-year limitations period under 5 V.I. Code Ann. § 31(5)(A). <u>Charleswell I</u>, 308 F. Supp. 2d at 562. Other courts have reached the same conclusion with regard to breach of fiduciary duty claims. <u>Barefoot Architect, Inc. v. Bunge</u>, No. 2004-99, 2007 WL 1959167, at *3

16

(D.V.I. June 22, 2007) (citing Charleswell I); Whitaker v. Merrill Lynch, Pierce Fenner & Smith, Inc., No. 1992-524, 1997 WL 252747, at *3 & n.4 (Terr. Ct. V.I. Apr. 21, 1997).

Further, in ruling that insurers and insurance brokers owe fiduciary duties to insureds under certain circumstances, the Court applied common law principles. Charleswell I, 308 F. Supp. 2d at 572-73. Although the Court considered 22 V.I. Code Ann. § 2 in predicting that the Supreme Court of the Virgin Islands would recognize the existence of fiduciary relationships in the insurance context, it did not conclude that section 2, itself, imposed any such duties. Id. In addressing plaintiffs' claim for breach of fiduciary duty in Charleswell I, the Court considered the alleged breach independent of any alleged violations of the Virgin Islands Insurance Code.

The Court remains of the opinion that plaintiffs' breach of fiduciary duty claim sounds in tort and is therefore subject to the two-year statute of limitations which applies to tort actions under 5 V.I. Code Ann. § 31(5)(A). This ruling is subject to plaintiffs' right to seek reconsideration if warranted by facts or legal authority not presently before the Court.

The Court now turns to the instant motions to dismiss. In those motions, defendants argue (1) that the original plaintiffs may no longer invoke the discovery rule with regard to their individual claims, (2) that the new plaintiffs may not invoke the discovery rule with regard to their individual claims because the Second Amended Complaint does not allege facts which demonstrate when they learned of their injuries or the cause of their injuries, (3) that plaintiffs' class claims do not qualify for class action tolling and must, as a result, be dismissed as time barred, and (4) that plaintiffs' claims are barred by the one-year suit limitations period contained in the Lloyds Master Policy. The Chase defendants raise issues one, two, and three; Lloyds raises arguments two, three, and four.

17

Although the Chase defendants and Lloyds assert many of the same statutes of limitations arguments, they are not similarly postured. The original plaintiffs filed their suit against the Chase defendants on July 6, 2001, almost six years after Hurricane Marilyn and the adjustment of their insurance claims. In their motion to dismiss the original Complaint, the Chase defendants challenged all of plaintiffs' claims as time-barred, with the exception of plaintiffs' contract claim which fell within the Virgin Islands' six-year statute of limitations for contract claims. Because the Court applied the discovery rule to the challenged claims, the Court concluded that the statutory limitations period began to run when plaintiffs obtained the Lloyds Master Policy in December 1999 and that all of plaintiffs' claims were timely. The Chase defendants now argue in their motion that, for various reasons, the Court should amend its <u>Charleswell I</u> ruling with regard to the original plaintiffs and should also dismiss the claims asserted by the new plaintiffs.

Lloyds, on the other hand, was not a party to the original Complaint. Although Lloyds was joined as a third-party defendant on July 16, 2002, plaintiffs did not assert any claims against Lloyds until December 1, 2004, more than nine years after Hurricane Marilyn and five years after the original plaintiffs obtained a copy of the Lloyds Master Policy. By the time plaintiffs first named Lloyds as a defendant, the original plaintiffs' negligence, breach of fiduciary duty, fraud, and RICO claims against Lloyds had expired. The new plaintiffs, on the other hand, allege that they were not aware of their DP-3 coverage until 2004, making all of their claims timely. Thus, while the new plaintiffs assert all six claims against Lloyds, the original plaintiffs only assert RICO and CICO claims against Lloyds. Accordingly, Lloyds's motion to dismiss focuses on the staleness of the new plaintiffs claims and relies on the Chase defendants' arguments with respect to the original plaintiffs' RICO and CICO claims.

18

1.     **Original Plaintiffs' Individual Claims Against the Chase Defendants and Lloyds** [8]

Defendants argue that the original plaintiffs' tort, RICO, and CICO claims should be dismissed as time-barred for one of two reasons—either because the Second Amended Complaint lacks certain essential allegations or because certain evidence presented at the class certification hearing demonstrates that the original plaintiffs discovered their injuries earlier than alleged. For the reasons that follow, the Court rejects each of these arguments.

The Chase defendants assert that the Second Amended Complaint does not include the allegations of the original Complaint which supported the Court's conclusion that the original plaintiffs did not discover their injuries until December 1999.[9] (Chase Mot. 7.) This argument is factually inaccurate. The original Complaint and the Second Amended Complaint contain substantially similar language with regard to the original plaintiffs' discovery of their injuries in December 1999 when they first received a copy of the Lloyds Master Policy.[10] Accordingly, the

---

[8] In this section, the Court addresses the timeliness of the original plaintiffs' breach of fiduciary duty, fraud, and negligence claims against the Chase defendants, as well as the original plaintiffs' RICO and CICO claims against both the Chase defendants and Lloyds. The Chase defendants do not challenge the timeliness of the original plaintiffs' contract claim, and Lloyds is not a defendant in the original plaintiffs' contract claim.

[9] The Chase defendants charge plaintiffs with deliberately deleting the necessary factual allegations because they were contradicted by the original plaintiffs' deposition testimony. (Chase Mot. 7.) This allegation is unfounded.

[10] The original Complaint states:
Because the Chase defendants failed and refused to provide copies of their 1995-1996 policy of insurance to their customers and continued to withhold the same from plaintiffs and the Class, it was not until after plaintiffs' counsel obtained said policies, pursuant to subpoena to Lloyd's in December 1999, that plaintiffs could have become aware of the existence of such 'additional' and 'other' coverages.
(Compl. ¶ 44.) The Second Amended Complaint states:
Defendants, on their own and acting in concert with one another, deliberately and

amendments in plaintiffs' Second Amended Complaint provide no basis for disturbing the Court's previous determination regarding plaintiffs' averments that they discovered their claims in December 1999.

The heart of the Chase defendants' argument appears to be that the original plaintiffs may no longer rely on the allegations of the Second Amended Complaint because certain deposition testimony undermines their attempt to invoke the discovery rule. In making this argument, the Chase defendants cite to the Court's Charleswell II class certification opinion and the deposition testimony of certain original plaintiffs. Defendants' reliance on these materials is misplaced.

In Charleswell II, the Court noted that one of the original plaintiffs, Ms. Pierre, admitted at her deposition that she was informed by a Chase representative that she had insurance coverage for certain additional losses. The Court stated that, in light of such testimony, Ms. Pierre could "not argue [that] she was unaware she was entitled to additional coverage before receiving a copy of the Lloyds policy in 1999." Charleswell II, 223 F.R.D. at 384. The Court did not, however, decide the statute of limitations issue. To the contrary, the Court merely observed that "some . . . plaintiffs may be subject to a statute of limitations defense on the 'additional coverage' claims" and gave one example. Id. This observation was made for purposes of class certification and did not constitute a ruling on the merits of Ms. Pierre's claim or any other

---

systematically suppressed, concealed, and misrepresented any coverage beyond dwelling repairs. It was not until plaintiffs' counsel obtained a copy of the Master Policy in December 1999, through subpoena to Lloyd's in another case, that the Original Plaintiffs could have become aware of the existence of the DP-3 coverages.

(2d Am. Compl. ¶ 36.) To the extent that plaintiffs exchanged "'additional' and 'other' coverages" for "DP-3 coverages," such a change is not material to the Court's discovery rule analysis.

plaintiffs' claim.[11]

In ruling on defendants' motions to dismiss, the Court must accept all of plaintiffs'

factual allegations as true and construe any reasonable inferences in plaintiffs' favor. Although

the parties conducted some discovery and presented some evidence to the Court with regard to

plaintiffs' motion for class certification, there is no basis for converting defendants' motions to

dismiss into motions for summary judgment. See JM Mechanical Corp. v. United States, 716

F.2d 190, 196-97 (1983). Thus, neither the evidence presented to the Court during the class

certification hearing nor the Court's brief discussion of defendants' statute of limitations defense

in Charleswell II can be used at this stage of the proceedings to challenge the allegations of the

Second Amended Complaint.

Although defendants do not explicitly move for reconsideration of the Court's statute of

limitations ruling in Charleswell I, their arguments on this issue implicitly do so. Both the Chase

defendants and Lloyds claim that plaintiffs' late discovery of the Lloyds Master Policy is

irrelevant because plaintiffs were put on notice of the existence of insurance and the nature of

their injuries in the Fall of 1995. (Chase Mot. 8-9; Lloyds Mot. 9, 12-14.) For the reasons that

follow, the Court affirms its previous statute of limitations decision and rejects defendants'

arguments on this issue.

Normally, under Virgin Islands law, the "statute of limitations begins to run upon the

occurrence of the essential facts which constitute the cause of action." Simmons v. Ocean, 544

---

[11] In their Response, plaintiffs argue that, even if the Court were to consider Ms. Pierre's
deposition testimony, the vague assurances of Chase representatives did not put her or any other
plaintiffs on notice with regard to the specific DP-3 coverages in the Lloyds Master Policy. (Pls.'
Chase Resp. 8-10.) Because it would be improper to review such evidence at the motion to
dismiss stage, the Court need not reach plaintiffs' argument on this point.

F. Supp. 841, 843 (D.V.I. 1982).  However, "the law of the Virgin Islands has in certain

circumstances incorporated the [d]iscovery [r]ule to delay the running of a statute of limitations"

where the injury or its cause is not readily apparent to the plaintiffs at the time the injury occurs.

In re Tutu Wells Contamination Litig., 909 F. Supp. 980, 984 (D.V.I. 1995); accord Joseph v.

Hess Oil, 867 F.2d 179, 182 (3d Cir. 1989).  In order to invoke the discovery rule, a plaintiff

must demonstrate "(1) when the plaintiff knew or should have known that he had suffered a harm

and (2) when the plaintiff knew or should have known the cause of his injury. Tutu Wells, 909 F.

Supp. at 985. Similarly, the limitations periods for RICO and CICO[12] claims begin to run once a

plaintiff discovers her injury, i.e., "when [she] knew or should have known of [her] injury."

See Forbes v. Eagleson, 228 F.3d 471, 484 (3d Cir. 2000) (adopting an injury discovery rule for

RICO claims).

Defendants correctly point out that the discovery rule is applied using an objective

reasonable person standard. Tutu Wells, 909 F. Supp. at 985 (citing Hess Oil, 867 F.2d at 189).

Further, the discovery rule does not obviate plaintiffs' duty to exercise reasonable diligence with

regard to the timely investigation of their possible claims. Hess Oil, 867 F.2d at 182; accord

Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991) (applying Pennsylvania law). Relying on these

principles, defendants contend that plaintiffs discovered their injuries—uncompensated DP-3

covered losses—in the Fall of 1995 when they did not receive insurance payments for certain

damage and expenses caused by Hurricane Marilyn. At this time, according to defendants,

---

[12] Because "CICO is cast in the mold of the federal RICO statute," the Court will apply
the statute of limitations rules which apply to RICO claims in determining when plaintiffs' CICO
claims accrued.  Pemberton Sales & Serv., Inc. v. Banco Popular de P.R., 877 F. Supp. 961, 970
(D.V.I. 1994).

plaintiffs knew of their actual injury, knew of the existence of insurance,[13] and should have taken steps to ascertain their legal rights under their insurance policies.

In this case, however, plaintiffs have not simply alleged breach of contract. The original Complaint and the Second Amended Complaint assert claims for negligence, breach of fiduciary duty, fraud, and racketeering activity, largely premised on the allegation that "[d]efendants . . . deliberately and systematically suppressed, concealed, and misrepresented any coverage beyond dwelling repairs." (2d Am. Compl. ¶ 36.) Plaintiffs, who allegedly relied on defendants' representations during the claim adjustment process with regard to their insurance coverage, could not have known that such representations were negligent, in breach of fiduciary duty, fraudulent, or the product of racketeering activity until they obtained information to the contrary. According to the Second Amended Complaint, that information was obtained by plaintiffs' counsel in December 1999 in the form of the Lloyds Master Policy, which had allegedly been withheld from plaintiffs.[14] This, therefore, is the event which put plaintiffs on notice of their claims against defendants and which began the running of the various statutes of limitations applicable to plaintiffs claims, at least for purposes of the instant motions to dismiss.

Having reviewed the allegations in the Second Amended Complaint and the cases cited by the parties, the Court concludes that the factual allegations of the Second Amended Complaint

---

[13] Plaintiffs admit this fact in the Second Amended Complaint when they allege that plaintiffs received Notices of Insurance soon after Hurricane Marilyn. (2d Am. Compl. ¶ 24 & Ex. 3.)

[14] Lloyds, in its motion, attacks plaintiffs' failure to allege that they requested a copy of the Lloyds Master Policy and were denied. (Lloyds Mot. 14.) The Court does not find the absence of any such allegation significant in light of plaintiffs' unequivocal assertions that defendants actively concealed and suppressed the terms of plaintiffs' insurance policies. (2d Am. Compl. ¶¶ 36, 40-44, 47.)

are sufficient to establish that the original plaintiffs discovered their injuries in December 1999 and that this date started the running of the statutes of limitations for both the original plaintiffs and the putative class they sought to represent in the original Complaint. The Court's ruling on this issue is without prejudice to defendants' right to assert their statute of limitations defense after the completion of relevant discovery.

Based on the December 1999 starting date, all six of the original plaintiffs' claims against the Chase defendants were filed within the applicable statutes of limitations periods. See Charleswell I, 308 F. Supp. 2d at 563. The original plaintiffs' claims against Lloyds in the Second Amended Complaint relate back to December 1, 2004, when plaintiffs filed their motion for leave to file the first amended complaint in which they named Lloyds as a defendant for the first time. Assuming that plaintiffs's counsel obtained a copy of the Lloyds Master Policy on the earliest possible day in December 1999, i.e. December 1, 1999,[15] plaintiffs' December 1, 2004 filing date would be exactly five years later. Original plaintiffs' CICO claim was, therefore, filed on the last possible day of the CICO limitations period.

Thus the original plaintiffs' CICO claim against Lloyds was timely filed within CICO's five-year limitations period. However, the original plaintiffs' RICO claim against Lloyds was not filed within RICO's four-year limitations period and must be dismissed.[16]

_____

[15] In Charleswell I, the Court discussed the necessity of alleging a specific discovery date. See Charleswell I, 308 F. Supp. 2d at 563.

[16] At no point do plaintiffs explain why the original plaintiffs' RICO claim against Lloyds, raised five years after December 1999, should be considered timely in light of RICO's four-year limitations period. Defendants do not address this specific issue because they argue that all of plaintiffs claims are untimely.

### 2.       New Plaintiffs' Individual Claims

Both Lloyds and the Chase defendants argue that the new plaintiffs' individual claims are time-barred because they fail to sufficiently allege facts which would allow them to invoke the discovery rule. (Chase Mot. 8-10; Lloyds Mot. 9-16.) The relevant portion of the Second Amended Complaint states: "The Class Plaintiffs were not named plaintiffs in the original complaint. Springette was not aware of the DP-3 coverages until she retained counsel in April 2004. The Acostas [were] not aware of the DP-3 coverages until they retained counsel in October 2004." (2d Am. Compl. ¶ 28). Defendants assert that such "conclusory allegations are utterly insufficient to permit Ms. Springette and the Acostas to invoke the discovery rule . . . ."[17] (Chase Mot. 11; accord Lloyds Mot. 8.)

With regard to the Chase defendants, the Court concludes that the new plaintiffs' discovery allegations are entirely irrelevant because the new plaintiffs are entitled to class action tolling under American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974). With respect to Lloyds, the Court concludes that the new plaintiffs' discovery allegations are irrelevant and, therefore, that the new plaintiffs' claims against Lloyds are only timely to the extent that the original plaintiffs' claims against Lloyds would be timely.

### a.       Claims Against the Chase Defendants

In American Pipe, the Supreme Court held that "the commencement of a class action

---

[17] Defendants also argue that the new plaintiffs were given notice of their possible claims by virtue of "the significant publicity" that has surrounded this case. (Chase Mot. 9; Lloyds Mot. 15-16.) Such an argument is inappropriate at the motion to dismiss stage where the Court must accept the facts alleged in the Second Amended Complaint as true and construe all reasonable inferences in plaintiffs favor. Regardless, in light of the Court's other rulings on the timeliness of the new plaintiffs' claims, their awareness of the instant litigation through newspaper articles or otherwise is irrelevant.

25

suspends the applicable statute of limitations as to all asserted members of the class who would

have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. It

matters not that some members of the class "did not rely upon the commencement of the class

action (or . . . were even unaware that such a suit existed) and thus cannot claim that they

refrained from bringing timely [individual causes of action]." Id. at 551. Moreover, in Crown,

Cork & Seal Co. v. Parker, 462 U.S. 345 (1983), the Supreme Court ruled that the availability of

American Pipe tolling does not depend on the type of action taken by unnamed class

plaintiffs—e.g., intervention or the filing of a new complaint—following the denial of class

certification. 462 U.S. at 353-54. Under this doctrine, statutes of limitations remain tolled until

class certification is denied. See Crown, Cork & Seal, 462 U.S. at 354.

In this case, plaintiffs added several new plaintiffs, in their individual and representative

capacities, in the First and Second Amended Complaints. Under that scenario, new plaintiffs'

individual claims benefit from class action tolling under American Pipe and Crown, Cork & Seal.

Thus, the new plaintiffs individual claims were tolled from July 9, 2001, the filing date for the

original Complaint, until August 6, 2004, the date on which the Court denied class certification.

The Second Amended Complaint was filed on June 18, 2008. The parties have not argued which

periods should be tolled following the denial class certification on August 6, 2004[18] or whether

the whole period should be tolled because the Court denied plaintiffs' motion for class

---

[18] Following the denial of class certification on August 6, 2004, plaintiffs (original and new) filed a motion for leave to file a first amended complaint on December 1, 2004. After the Court's denial of plaintiffs motion to file the first amended complaint on September 7, 2005, plaintiffs filed a motion for leave to file a second amended complaint on September 20, 2005. Plaintiffs were granted leave to file the Second Amended Complaint, which was then filed on June 18, 2008.

certification without prejudice. Nevertheless, the Court calculates that the Second Amended

Complaint was filed, at most, 713 days after the discovery of the Lloyds Master Policy, and

therefore 18 days before the expiration of the two-year statutes of limitations.

Thus, the Court concludes that the new plaintiffs are entitled to American Pipe tolling and

that with tolling, new plaintiffs' individual claims against the Chase defendants fall within two

years of December 1999. Thus, they are not barred by the applicable statutes of limitations.

### b.   Claims Against Lloyds

Lloyds argues that the introduction of three new plaintiffs in December 2004 with claim

"discovery" dates in 2004 represents a "transparent attempt to evade the limitations" periods

applicable to plaintiffs' claims against Lloyds which should have been raised, if at all, in the

original Complaint. (Lloyds Mot. 5.) Plaintiffs counter that Lloyds's attacks on the truthfulness

of the new plaintiffs allegations "is an improper attempt to shift the burden at the motion to

dismiss stage, and must be rejected as the Court must accept those allegations as true." (Pls.'

Resp. to Lloyds Mot. 11.) Although the parties cite numerous cases for various legal principles,

neither plaintiffs nor Lloyds cite any cases which approximate the procedural posture of the case

at bar.

In this case, plaintiffs have alleged that defendants' tortious conduct, racketeering

activity, and breach of contract came to light in December 1999 when class counsel obtained a

copy of the Lloyds Master Policy pursuant to a subpoena duces tecum issued in another

case—Nibbs v. Chase Manhattan Bank, No. 96-204 (D.V.I. filed Sept. 16, 1996). The original

plaintiffs filed their class action Complaint against the Chase defendants based on that event.

(Compl. ¶ 44.)

There are no allegations in the Second Amended Complaint which explain why Lloyds was not named as a defendant until December 1, 2004. Both the Notices of Insurance sent to plaintiffs following Hurricane Marilyn and the Lloyds Master Policy discovered in December 1999 reveal that plaintiffs' property was covered by Lloyds-issued insurance. (2d Am. Compl. ¶¶ 20, 24 & Exs. 1, 3.) Further, plaintiffs do not allege that information obtained after the filing of the original Complaint uncovered Lloyds's liability with respect to the new plaintiffs' claims. The only allegation which supports the late assertion of claims against Lloyds is the fact that the new plaintiffs did not "retain" counsel until April and October of 2004.

Plaintiffs generally bear the burden of establishing the applicability of the discovery rule to their claims, and the Court predicts that the Virgin Islands Supreme Court would adopt the same rule. See Barnes v. Koppers, Inc., 534 F.3d 357, 365 (5th Cir. 2008); Moyer v. United Dominion Indus., Inc., 473 F.3d 532, 547 (3d Cir. 2007); John Q. Hammons Hotels, Inc. v. Acorn Window Sys., Inc., 394 F.3d 607, 610 (8th Cir. 2005) (quoting Estate of Montag v. T.H. Agric. & Nutrition Co., 509 N.W.2d 469, 470 (Iowa 1993)); Samuel v. Gov't of the V.I., No. 2002-61, 2006 WL 361 3257, at *3 (D.V.I. Nov. 22, 2006.) As a result, plaintiffs must allege facts supporting the application of the discovery rule in the Second Amended Complaint, and that Complaint is subject to dismissal, in whole or in part, for failure to sufficiently allege such facts.

In the Second Amended Complaint, the new plaintiffs do not state what prompted them to retain counsel in 2004; that Complaint simply states that the new plaintiffs did not learn of the DP-3 coverages until they retained counsel in April and October 2004. (2d Am. Compl. ¶ 28.) Lloyds argues that using "the appearance of 'new' plaintiffs at counsel's doorstep" to avoid the application of contractual and statutory limitations periods "cannot be the standard [because] it

would render meaningless any limitations period, whether contractual or statutory. (Lloyds Mot. 12.) The Court agrees.

Although the new plaintiffs, as substitute named plaintiffs for the class, may benefit from class counsel's discovery of the Lloyds Master Policy in December 1999, they may not use class counsel's "discovery" of new class members in 2004 to revive the original plaintiffs' time-barred claims against Lloyds. Any contrary conclusion would invite abuse of the class action form. Because Lloyds was not named as a defendant until December 1, 2004, exactly five years after any day in December 1999 (see *supra* Part IV.A.1), the new plaintiffs' breach of fiduciary duty, fraud, and negligence claims are barred by the two-year statute of limitations in 5 V.I. Code Ann. § 31(5)(A). The new plaintiffs' RICO claims against Lloyds are also time-barred by RICO's four-year limitations period. Agency Holding Corp., 483 U.S. at 156. However, the new plaintiffs' contract claims and CICO claims both survive under the six-year limitations period for contract claims in 5 V.I. Code Ann. § 31(3)(A) and the five-year limitations period for CICO claims in 14 V.I. Code Ann. § 607(h).

### 3.    Class Claims and Class Action Tolling Under American Pipe

As described above, it is well settled that the filing of a class action tolls the running of statutes of limitations for subsequently filed claims of individual class members. See Crown, Cork & Seal, 462 U.S. at 353-54; American Pipe, 414 U.S. at 553-54; Bailey v. Sullivan, 885 F.2d 52, 65 (3d Cir. 1989). The Supreme Court has not, however, addressed whether American Pipe tolling extends to subsequently filed class claims. Defendants[19] argue vigorously that

---

[19] Although both the Chase defendants and Lloyds argue the inapplicability of American Pipe to subsequent class claims, such tolling is irrelevant to the class claims against Lloyds because Lloyds was not named as a class action defendant until December 1, 2004.

American Pipe tolling only applies to individual claims and not to class claims. In making this argument, defendants completely disregard Third Circuit precedent on the issue.

The Third Circuit, in two cases, has definitively held that subsequent class claims may be tolled under American Pipe, depending on the Court's grounds for denying class certification in the initial action. Yang v. Odom, 392 F.3d 97 (3d Cir. 2004); McKowan Lowe & Co., Ltd. v. Jasmine, Ltd., 295 F.3d 380 (3d Cir. 2002); see also Haas v. Pittsburgh Nat'l Bank, 526 F.2d 1083 (3d Cir. 1975). Specifically, "the class claims of intervening class members are tolled if a district court declines to certify a class for reasons unrelated to the appropriateness of the substantive claims for certification." McKowan, 295 F.3d at 389. In Yang, the Third Circuit affirmed McKowan's application of American Pipe tolling to class claims that had been denied based on deficiencies in class representation and clarified that ruling, stating that "American Pipe tolling will not apply to sequential class actions where the earlier denial of certification was based on a Rule 23 defect in the class itself." Yang, 392 F.3d at 104.

The distinction that the Third Circuit has drawn between defects in the class and defects in the class representation furthers the principles underlying Federal Rule of Civil Procedure 23 and American Pipe. Where the "appropriateness of the substantive claims for certification" has not been determined, American Pipe tolling promotes the effective use of the class form. Yang, 392 F.3d at 111-12; McKowan, 295 F.3d at 389. On the other hand, where a district court has articulated "dispositive reasons indicating unequivocally that a class action suit [is] inappropriate," the application of American Pipe tolling would allow subsequent class plaintiffs to relitigate, in perpetuity, the prior denial of class certification, and that is not permitted. Yang, 392 F.3d at 102, 107-08 (quoting Korwek v. Hunt, 827 F.2d 874, 877 (2d Cir. 1987)); McKowan,

295 F.3d at 386.

In this case, the Court denied without prejudice plaintiffs' first motion for class certification due to deficiencies in the class itself and deficiencies in class representation. The Court determined that "for at least two of [plaintiffs'] three claims, common questions do not predominate." Charleswell II, 223 F.R.D. at 379. With regard to the third claim—plaintiffs' claim for DP-3 covered losses—the Court concluded that the record at the time did not support the certification of a class but that common questions might predominate "if plaintiffs determine, based on further discovery, that the [Lloyds Master Policy] is the only written insurance policy covering plaintiffs." Id. at 382. The Court denied plaintiffs' motion "without prejudice to plaintiffs' right to file an amended class action complaint and/or a renewed motion for class certification based on claims for [DP-3 coverage] under the [Lloyds Master Policy]." Id. at 383.

Defendants argue that the Court's class certification decision amounted to a final ruling on deficiencies in the class itself and that, therefore, the Second Amended Complaint should be dismissed under Yang as a "substantively identical class action" which was previously determined to be "inappropriate for class treatment." (Chase Mot. 12 (quoting Yang, 392 F.3d at 104); Lloyds Mot. 9.) The Court disagrees. The Court did not determine that plaintiffs' DP-3 claims were inappropriate for class treatment, and in filing the Second Amended Complaint, plaintiffs do not seek to relitigate the correctness of the Court's denial of their first motion for class certification. To the contrary, the Second Amended Complaint appears to have been filed in accordance with the Court's ruling on class certification to the extent it permitted further development of plaintiffs' DP-3 claims on a class-wide basis.

Thus, under Third Circuit precedent, the new plaintiffs' class claims against the Chase

31

defendants are entitled to <u>American Pipe</u> tolling and are not, therefore, barred by the various statutes of limitations at issue in this case. The new plaintiffs' remaining class claims against Lloyds—breach of contract (Count I) and CICO (Count V)—were filed within the statutes of limitations and do not, therefore, require tolling.

**4.    Lloyds's Argument that Plaintiffs' Claims Are Time-Barred Under the Suit Limitations Provision in the Lloyds Master Policy**

Lloyds asserts that all of plaintiffs' claims should be barred by the one-year suit limitations provision in the Lloyds Master Policy, which was attached to the Second Amended Complaint and states that "no action shall be brought unless there has been compliance with the policy conditions and the action is started within one year after the loss." (Lloyds Mot. 4, 6-7, 12-14; 2d Am. Compl. Ex. 1.)

Under Virgin Islands law, suit limitations provisions in insurance policies may be enforced as long as they are not less than one year. 22 V.I. Code Ann. § 820(a)(3) ("In contracts of property insurance . . . limitation [of a right of action] shall not be to a period of less than one year from the date of the loss."); <u>Spink v. General Accident Ins. Co. of P.R., Ltd.</u>, 36 F. Supp. 2d 689, 692 (D.V.I. 1999), <u>rejected on other grounds by</u> <u>Edwards v. HOVENSA, LLC</u>, 497 F.3d 355, 359 (3d Cir. 2007); 16 Couch on Insurance 3d § 235:4, at 72 (Rev. ed. 1995) ("[L]imitations for the bringing of an action on a policy of insurance are valid and reasonable although they shorten the statutory period otherwise applicable . . . ."). Several courts have held insurance contract provisions enforceable even where the insured does not receive a copy of the policy. <u>See</u> <u>Wells Fargo Home Mortgage, Inc. v. Allstate Ins. Co.</u>, 199 F. App'x 912, 915 (11th Cir. 2006) (citing <u>Se. Sec. Ins. Co. v. Empire Banking Co.</u>, 498 S.E.2d 282, 284 (Ga. App. 1998); <u>Gagliardi</u>

v. Omaha Prop. & Ins. Co., 952 F. Supp. 212, 216 n.4 (D.N.J 1997); Young v. Seven Bar Flying Serv., Inc., 685 P.2d 953, 956 (N.M. 1984).

In some circumstances, however, insurers are estopped from relying on contract provisions that limit the insureds' right to recover. For example, "[i]f the insurer acts to deny the insured access to the policy, and the policy itself is the source of the limitation period on which the insurer relies, the consequence of the insurer's actions should be waiver of the limitation period." Wells Fargo, 199 F. App'x at 915; see also Spink, 36 F. Supp. 2d at 693-94 ("[Defendant] spent nearly two years ignoring the plaintiffs' contractual rights. It cannot now invoke the suit limitations clause of that contract to extinguish their claim."); Young, 685 P.2d at 956 ("In order to establish that an insurer has waived notice of loss requirements, and is thereby estopped from asserting them, it must be shown that the insured was misled by conduct of the insurer, upon which the insured relied to his detriment.").

Because the Second Amended Complaint alleges that defendants deliberately concealed the terms of the Lloyds Master Policy, the Court concludes that defendants may not, at this stage in the litigation, rely on the policy's one-year suit limitations provision to bar plaintiffs' claims. This determination is without prejudice to defendants' right to assert the validity of the Lloyds suit limitations provision after the completion of relevant discovery.

### 5. Plaintiffs' Excessive Premium Claims (Counts II & VI)

In Charleswell II, the Court ruled, based on the evidence presented at the time, that "the production of the Lloyds policy [in December 1999] was not essential to plaintiffs' discovery of claims for excessive premiums" and that "plaintiffs were aware of the fact that the premiums did not change after their properties were damaged" by Hurricane Marilyn in September 1995.

33

Charleswell II, 223 F.R.D. at 382. Accordingly, the Court concluded that plaintiffs' claims for excessive premiums were time-barred by the two-year limitations period for tort claims and the five-year limitations period for CICO claims. Id. When the Court denied plaintiffs' motion for leave to file their First Amended Complaint, it instructed plaintiffs to "delete from the class allegations of the Second Amended Complaint all allegations excepting those based on claims for [DP-3 coverage] under the Lloyds policy" and to "comply in all other respects with the August 6, 2004 Memorandum and Order." (Order dated Sept. 7, 2005 at 2.)

Plaintiffs continue to assert claims based on excessive premiums.  In Count II of the Second Amended Complaint, plaintiffs allege that defendants breached their fiduciary duty to plaintiffs "by over-insuring their homes and properties after Hurricane Marilyn and collecting premiums for that over-insurance, in violation of 22 V.I.C. § 1051(c)." (2d Am. Compl. ¶ 65.) In Count VI, plaintiffs allege that defendants were negligent by "[c]ontinuing to charge the Plaintiffs and the Class for windstorm, hazard and casualty insurance for their homes and dwellings which suffered extensive damages in Hurricane Marilyn, because defendants knew or should have known that the damages caused by Hurricane Marilyn either rendered these homes and dwellings uninsurable or devalued the properties to such an extent that any insurance provided for said properties violated 22 V.I.C. § 1051(c)."[20] (2d Am. Compl. ¶¶ 94, 95(c).)

These claims do not comply with the Court's August 6, 2004 Memorandum and Order.

---

[20] It is unclear whether plaintiffs also assert their excessive premium claims in the CICO and RICO Counts of the Second Amended Complaint. The factual allegations underlying the excessive premium claims are stated among the "Additional Common RICO Facts," but not mentioned specifically in either Count IV (RICO) or Count V (CICO). (2d Am. Compl. ¶¶ 46, 73-80, 81-92.) To the extent that the excessive premium claims are asserted in Counts IV and V, the claims would be untimely under the RICO and CICO statutes of limitations based on the Court's ruling in Charleswell II.

Accordingly, they are dismissed, subject to plaintiffs' right to seek reconsideration if warranted by facts or legal authority not presently before the Court.

## B.   The Chase Defendants' Argument that in the Absence of Any Written Agreement, Plaintiffs' Contract Claim Should Be Dismissed (Count I)

The Chase defendants claim that, under Virgin Islands law, all insurance contracts must be in writing and further assert that plaintiffs allegations in the Second Amended Complaint amount to an admission that no such written policy exists. The Second Amended Complaint states that "[o]n information and belief, as of the time of Hurricane Marilyn, the [CMB and CMMC] did not prepare a separate written contract or policy to memorialize [their insurance] obligation." (2d Am. Compl. ¶ 25.) The Chase defendants argue that this allegation demonstrates that plaintiffs have failed to state a claim for breach of contract and that Count I of the Second Amended Complaint must be dismissed.[21]

In support of the purported written policy requirement of Virgin Islands law, defendants cite sections 814 and 819 of the Virgin Islands Insurance Code. Section 814, which sets forth the general content of insurance policies, states that "[t]he written instrument, in which a contract of insurance is set forth, is the policy." 22 V.I. Code Ann. § 814. Section 819, entitled "Policy must contain entire contract," states that "[n]o agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made a part of the policy." 22 V.I. Code Ann. § 819.

Plaintiffs do not challenge defendants' assertion that insurance policies must be in writing

---

[21] The Chase defendants further argue that plaintiffs' good faith and fair dealing claim must be dismissed because such a claim "cannot exist in the absence of an underlying contract." (Chase Mot. 13.) Because the Court rejects the Chase defendants' written contract argument, defendants' good faith and fair dealing argument is moot.

and do not allege that a single written insurance policy between CMB/CMMC and any given plaintiff exists. Instead, plaintiffs argue that a number of written documents, in the aggregate, establish the existence and terms of the CMB and CMMC insurance policies.[22] Specifically, plaintiffs point to (1) the Lloyds Master Policy, (2) the CMMC Force Order Reports, (3) the Notice of Insurance sent to plaintiffs after Hurricane Marilyn, (4) September 1995 correspondence from CMB/CMMC/Donnelly to plaintiffs, and (5) invoices and premium statements sent to plaintiffs by Chase.[23] (Pls.' Resp. to Chase Mot. 18; 2d Am. Compl. ¶¶ 15, 20, 24, 44(a), 46 & Exs. 1-3.)

No court has ruled that sections 814 and 819 of the Virgin Islands Insurance Code preclude the enforcement of oral insurance contracts or insurance contracts which exist in the form of several documents. The only court which has cited either of these provisions is this Court in Charleswell I, where the Court stated that "[i]t is not necessary for plaintiffs to produce evidence of a written agreement with defendants to procure or provide insurance" as long as the alleged oral contract contains all of the essential terms for an enforceable insurance contract.

---

[22] Plaintiffs' efforts to establish the terms of the insurance policy through written documents is also relevant for purposes of class certification. In Charleswell II, the Court ruled that any claims based substantially on oral communications would not be appropriate for class treatment. Charleswell II, 223 F.R.D. at 380-81.

[23] The Chase defendants argue that plaintiffs combined-document theory is contradicted by the language of the Second Amended Complaint which, according to the Chase defendants, states that CMB and CMMC did not prepare a written policy. This argument is without merit. The Second Amended Complaint states plaintiffs' supposition, after years of discovery, that "the Chase defendants did not prepare a *separate* written contract or policy," and lists all of the documents referenced in the text above. (2d Am. Compl. ¶ 25 (emphasis added).) Plaintiffs were not required to state any legal theories in their Complaint and their allegations with regard to the above-listed documents sufficiently support their theory that such documents establish the terms of a valid insurance policy. Fed. R. Civ. P. 8(a).

Charlewell I, 308 F. Supp. 2d at 559 (citing, *inter alia*, Couch on Insurance 3d § 13:18 and 22

V.I. Code Ann. § 814). Further, the Restatement (Second) of Contracts provides the general rule,

adopted by Virgin Islands law under 1 V.I. Code Ann. § 4, that a contract "may consist of several

writings if one of the writings is signed and the writings in the circumstances clearly indicate that

they relate to the same transaction." Restatement (Second) of Contracts § 132.

Plaintiffs have alleged that CMB and CMMC contracted with plaintiffs to provide

insurance coverage for their mortgaged properties and that the terms of the agreement exist in the

form of several written documents. (2d Am. Compl. ¶¶ 16-17; Pls.' Resp. to Chase Mot. 18.)

Plaintiffs paid insurance premiums to CMB and CMMC for this coverage and plaintiffs allege

that they paid for greater insurance coverage than CMB and CMMC purchased from Lloyds in

the form of the Master Policy. (2d Am. Compl. ¶¶ 20-23, 25, 29.) In addition, plaintiffs allege

that CMB and CMMC failed to comply, in various respects, with the requirements of the Virgin

Islands Insurance Code. Specifically, plaintiffs allege that CMB and CMMC operated as an

unlicensed insurance company or insurance agent/broker and that they failed to provide plaintiffs

with copies of their insurance policies. (2d Am. Compl. ¶¶ 17, 24.)

In light of the allegations outlined above, the Court concludes that plaintiffs' have stated a

viable contract claim. Accordingly, the Court denies the Chase defendants' motion to dismiss

Count I of the Second Amended Complaint.

C.     **The Chase Defendants' Arguments With Regard to Plaintiffs' Claims for
       Breach of Fiduciary Duty, Negligence, Fraud, and Violations of RICO &
       CICO (Counts II – VI)**

For each of the remaining Counts of the Second Amended Complaint, the Chase

defendants present the same arguments that they presented their motion to dismiss the original

37

Complaint. The Court considered and rejected all such arguments in Charleswell I. Charleswell I,

308 F. Supp. 2d at 564-566, 568-78. Accordingly, the Court only considers the Chase

defendants' arguments to the extent they are based specifically on the allegations in the Second

Amended Complaint.

With regard to plaintiffs' negligence and breach of fiduciary duty claims, the Chase

defendants argue that they owe plaintiffs no duty, fiduciary or otherwise, as mortgage holders and

that, to the extent that insurers or insurance brokers owe such duties to insureds,[24] the Lloyds

Master Policy proves that the Chase defendants are not insurers. (Chase Mot. 14-15.) This

argument is rejected. The Lloyds policy demonstrates that, as between CMB and Lloyds, Lloyds

was the insurer and CMB was the insured. The Lloyds policy does not in any way contradict

plaintiffs' allegations that CMB and CMMC operated as an unlicensed insurance company or

insurance broker with regard to plaintiffs. The Court, therefore, affirms its previous ruling with

regard to plaintiffs' breach of fiduciary duty claims.

The Chase defendants challenge plaintiffs' fraud, RICO, and CICO claims on the ground

that plaintiffs failed to plead such claims with particularity as required by Federal Rule of Civil

Procedure 9(b). In Charleswell I, the Court noted that this case "is not primarily about what

defendants said [but instead] the case focuses on what they did not say." Charleswell I, 308 F.

Supp. 2d at 570. The Court concluded that allegations of such omissions and failures to disclose

---

[24] In Charleswell I, the Court discussed the role of insurers and insurance brokers at
length and determined that "it is likely that Virgin Islands courts would . . . recognize that, under
certain circumstances, a fiduciary duty can arise in [the] context [of a insurance relationship]."
Charleswell I, 308 F. Supp. 2d at 537. The Court also held that the Virgin Islands Insurance Code
imposes certain duties on insurers and insurance brokers for the purposes of plaintiffs'
negligence claim. Id. at 564, 571-72.

justified relaxing the particularity rule. Id.  Plaintiffs' fraud, RICO, and CICO claims in the

Second Amended Complaint continue to be based on defendants' omissions and on particular

documents which are specifically identified in the Complaint. The Chase defendants have not

pointed to any changes in the Second Amended Complaint which would justify reconsideration

of the Court's previous ruling.[25] Accordingly, the Court affirms its rulings in Charleswell I on the

sufficiency of plaintiffs' allegations for their fraud, RICO, and CICO claims. Charleswell I, 308

F. Supp. 2d at 570, 576-77.

**D.     Lloyds's Arguments Concerning Defects in Plaintiffs' Class Allegations**

Lloyds argues that plaintiffs' proposed class definition is "plainly unworkable" subjecting

all class claims in the Second Amended Complaint to dismissal. (Lloyds Mot. 16-17.) Lloyds

further argues that an alleged conflict of interest prevents plaintiffs' counsel from adequately

representing the putative class. (Id. 17-24.) These arguments are not properly raised in a motion

to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and the Court declines to

consider them at this time.

**V.     CONCLUSION**

For all of the foregoing reasons, the Chase defendants' Motion to Dismiss is denied and

Lloyds's Motion to Dismiss is granted in part and denied in part. The Lloyds's Motion to

Dismiss is granted with respect to the new plaintiffs' breach of fiduciary duty, fraud, RICO, and

---

[25] To the extent that the Chase defendants rely on deposition testimony presented for the purposes of class certification, such evidence is not appropriate for consideration at the motion to dismiss stage. The Court also rejects the Chase defendants' argument that Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1956 (2007), changed the legal standard for motions to dismiss such that plaintiffs claims no longer suffice. To the contrary, the Court concludes that the Second Amended Complaint satisfies the Twombly (and now Iqbal) standard.

negligence claims (Counts II, III, IV, and VI) and with respect to the original plaintiffs' RICO

claim (Count IV). The Lloyds's Motion to Dismiss is denied in all other respects. Furthermore,

the paragraphs of the Second Amended Complaint which assert claims based on excessive

premiums are dismissed *sua sponte*. Surviving are the following claims:

| | |
|---|---|
| Count I (contract): | all plaintiffs v. Chase defendants; new plaintiffs v. Lloyds |
| Count II (fiduciary duty): | all plaintiffs v. Chase defendants |
| Count III (fraud): | all plaintiffs v. Chase defendants |
| Count IV (RICO): | all plaintiffs v. Chase defendants |
| Count V (CICO): | all plaintiffs v. Chase defendants; all plaintiffs v. Lloyds |
| Count VI (negligence): | all plaintiffs v. Chase defendants |

To the extent that the Court has denied defendants' motions, the denial is without

prejudice to defendants' right to address such issues after the completion of relevant discovery.

The Court's ruling on the statute of limitations applicable to plaintiffs' breach of fiduciary duty

claim and the Court's dismissal of plaintiffs' excessive premium claims are subject to plaintiffs'

right to seek reconsideration if warranted by facts or legal authority not presently before the

Court.

An appropriate Order follows.